# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation, | ) ) ) ) Civil Action No. 2:21-cv-179 |
| Plaintiff, | ) **DEMAND FOR JURY TRIAL** |
| v. | ) |
| R&R MEDICAL, LLC d/b/a BEAR KOMPLEX, an Indiana limited liability company, | ) ) ) ) |
| Defendant. | ) ) |

## COMPLAINT FOR TRADEMARK AND TRADE DRESS INFRINGEMENT

Plaintiff Monster Energy Company ("Plaintiff" or "Monster"), a Delaware corporation, by and through its undersigned attorneys, files this Complaint against Defendant R&R Medical LLC, d/b/a Bear KompleX ("Defendant" or "Bear KompleX"), an Indiana limited liability company, and alleges as follows:

### JURISDICTION AND VENUE

1.      This is an action for (1) trademark infringement under 15 U.S.C. § 1114, (2) trademark infringement, trade dress infringement, and false designation of origin under 15 U.S.C. § 1125(a), (3) trademark dilution under 15 U.S.C. § 1125(c), and (4) Indiana unfair competition.

2.      The Court has original subject matter jurisdiction over the federal claims in this complaint pursuant to 15 U.S.C. §§ 1116 and 1121(a) and 28 U.S.C. §§ 1331 and 1338, as these claims arise under the trademark laws of the United States.  The Court has supplemental

jurisdiction over the claims in this Complaint for state common law unfair competition pursuant to 28 U.S.C. §§ 1338(b) and 1367(a), because the state law claim is so related to the federal trademark claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3.      This Court has personal jurisdiction over Defendant.  Defendant is based in Lake County, Indiana.  Defendant has also marketed, advertised and promoted its goods in Indiana, including in this judicial district, via at least its website (https://www.bearkomplex.com/) and social media sites (including Facebook and Instagram).  Further, Defendant has sold its fitness-related equipment and other products through its website to buyers in Indiana and in this judicial district.   In addition, Defendant's trademark infringement, trade dress infringement, false designation of origin, trademark dilution, and unfair competition in this judicial district, including its use of infringing marks and trade dress in connection with the advertisement, marketing, promotion, and/or sale of products to customers in this district, are acts forming a substantial part of the events or omissions giving rise to Monster's claims.

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events complained of herein took place in the district.

## THE PARTIES

5.      Monster is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 1 Monster Way, Corona, California 92789.

6.      Monster is informed and believes, and on that basis alleges, that Bear Komplex is a limited liability company organized and existing under the laws of the State of Indiana, having a principal place of business at 3300 E. 84th Place, Merrillville, Indiana 46410.  Monster is

informed and believes, and on that basis alleges, that Bear KompleX sells its fitness related products online to buyers in Indiana and in this judicial district.

<u>**COMMON ALLEGATIONS FOR ALL CLAIMS OF RELIEF**</u>

**A.**   <u>**Monster's Trademarks and Trade Dress**</u>

7.     Monster is a nationwide leader in the business of developing, marketing, selling, and distributing ready-to-drink beverages, including energy drinks, and related products.

8.     In 2002, long before Defendant's infringing activity, Monster launched its MONSTER ENERGY® drink brand, the containers of which all prominently display Monster's now-famous 〽️® mark, an M-shaped claw design with jagged or irregular contours designed to evoke a claw having torn through the can or other material ("Claw Icon").  Images of Monster's flagship and best-selling original MONSTER ENERGY® drink and packaging, which display the Claw Icon, are shown below.

 

9.     In addition to its Claw Icon, since 2002, Monster has consistently used a distinctive trade dress for packaging, clothing, bags, sports gear, helmets, and promotional

-3-

materials that includes the colors green and black in combination with Monster's Claw Icon (the "Monster Trade Dress").   Examples of the Monster Trade Dress are shown above and below.



| **Die Cut Signage** | **Hanging Sign** | **Poster** |

As these examples illustrate, the Claw Icon mark often appears in the color green and against a black or black/gray background.

10.     Monster is the owner of numerous U.S. Trademark Registrations for marks that incorporate the Claw Icon, including in connection with the colors green or green and black. Monster's U.S. Trademark Registrations include, for example, the following:

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|------|----------|----------------|------------|-----------|
| | 2,903,214 | Drinks, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated and non-carbonated energy or sports drinks, fruit juice | 5/7/2003 | 11/16/2004 |

-4-

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  |  | drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not |  |  |
| | 4,011,301 | Sports helmets; video recordings featuring sports, extreme sports, and motor sports | 7/27/2010 | 8/16/2011 |
| | 4,721,432 | Promoting goods and services in the sports, motorsports, electronic sports, and music industries through the distribution of printed, audio and visual promotional materials; promoting sports and music events and competitions for others | 3/12/2014 | 4/14/2015 |
| | 3,434,821 | Nutritional supplements | 9/7/2007 | 5/27/2008 |
| | 4,625,118 | Dairy-based beverages; dairy-based energy shakes; energy shakes; coffee energy; shakes; chocolate energy shakes

Ready to drink tea and tea based beverages; ready to drink flavored tea, tea based beverages; ready to drink coffee and coffee based beverages; ready to drink flavored | 6/4/2014 | 10/21/2014 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|------|----------|----------------|------------|-----------|
| | | coffee and coffee based beverages; ready to drink chocolate based beverages | | |
| | 5,580,962 | Nutritional supplements; nutritional supplements for purposes of boosting energy; dietary supplemental drinks in the nature of vitamin beverages<br><br>Sport helmets; video recordings featuring sports, extreme sports and motor sports<br><br>Silicone wristbands in the nature of bracelets; silicone bracelets; jewelry, namely, bracelets and wristbands; lanyard necklace; watches<br><br>Stickers, sticker kits comprising stickers and decals; decals; posters; calendars<br><br>All-purpose sport bags; all-purpose carrying bags; backpacks; duffel bags<br><br>Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts; sweat shirts, jackets, pants, bandanas, sweat bands, gloves and motorcycle gloves; headgear, namely, hats and beanies | 5/17/18 | 10/9/18 |

-6-

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | Non-alcoholic beverages, namely, energy drinks, sports drinks, and sports and/or energy drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | | |
| | 5,022,676 | Nutritional supplements in liquid form<br><br>Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks | 5/28/2014 | 8/16/2016 |
| | 3,908,601 | Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely, hats and beanies | 4/2/2009 | 1/18/2011 |
| | 3,914,828 | Sports helmets | 4/2/2009 | 2/1/2011 |
| | 5,664,586 | Beverageware; insulated beverage containers for domestic use; drinking bottles for sports; water bottles sold empty | 12/4/2017 | 1/29/2019 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | 4,865,702 | Nutritional supplements in liquid form<br><br>Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks | 2/2/2015 | 12/8/2015 |
| | 3,963,668 | Stickers; sticker kits comprising stickers and decals; decals; posters | 7/27/2010 | 5/17/2011 |
| | 3,963,669 | All purpose sport bags; all-purpose carrying bags; backpacks; duffel bags | 7/28/2010 | 5/17/2011 |
| | 4,051,650 | Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely hats and beanies | 7/27/2010 | 11/8/2011 |

11.     Attached hereto as Exhibits 1-14 are true and correct copies of Monster's trademark registrations identified in Paragraph 10 of this complaint, which are hereby incorporated by reference.  Collectively, Monster's common law rights in its Claw Icon and its above-referenced trademark registrations are referred to as the "Asserted Marks."

-8-

12.     Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 2,903,214, 4,011,301, 3,434,821, 4,625,118, 3,908,601, 3,914,828, 3,963,668, 3,963,669, and 4,051,650 and are incontestable.

13.     As a result of Monster's substantial and continuous use of its Claw Icon and Monster Trade Dress, Monster is also the owner of strong common-law trademark rights in its Claw Icon and strong common-law trade dress rights in its packaging and promotional materials that incorporate the Monster Trade Dress.

14.     The MONSTER brand is the best-selling energy drink brand in the United States. Monster sells drinks bearing its Claw Icon and Monster Trade Dress in over 370,000 retail outlets in the United States, including convenience stores, gas stations, and grocery stores.

15.     Monster's Claw Icon and Monster Trade Dress are the subject of substantial and continuous marketing and promotion by Monster in connection with its MONSTER line of drinks.  Since Monster launched its MONSTER line of drinks in 2002, over 95% of Monster's marketing for the drinks has featured Monster's green and black trade dress, including in combination with the Claw Icon with and without the word MONSTER.

16.     In addition, since 2002, Monster has continuously used and promoted its Claw Icon and Monster Trade Dress in connection with fitness-related equipment and accessories, clothing, nutritional supplements, fitness beverages, fitness and athletic events, and numerous other products and services.  Monster widely markets and promotes its Claw Icon and Monster Trade Dress to consumers by, for example, displaying the Claw Icon and the Monster Trade Dress extensively on billions of cans of beverages and nutritional supplements; on apparel, merchandise, and fitness equipment; in gyms and at sporting and athletic events; on promotional and point-of-sale materials; in magazines and other publications; on the monsterenergy.com

website, monsterarmy.com website and other websites and social media sites; and at trade shows, concert tours and live events. In addition, Monster promotes the Claw Icon and the Monster Trade Dress through, for example, the sponsorship of sports events, athletes, and music festivals that are televised nationwide and internationally.

17.    Since 2003, Monster has promoted, distributed, and sold its products in connection with the MONSTER Marks at numerous gyms, fitness clubs, athletic clubs and fitness-related events, such as LA Fitness and Equinox gyms, and Max Muscle Sports Nutrition events. Monster also sells its beverages in hundreds of fitness-related stores such as GNC.

18.    Since 2013, Monster has also licensed the Claw Icon to several gyms for use on gym equipment. The Claw Icon appears prominently throughout these gyms, including on gym equipment, interior gym walls, heavy bags, boxing gloves, cage panels, corner bumpers, banners, and mats for MMA cages and boxing rings. Gyms that Monster sponsors or has sponsored include the Chainsaw Fitness gym and training center in Vista, California; the American Kickboxing Academy gym in San Jose, California; the Sityodtong Muay Thai Academy in Sommerville, Maryland; the Alliance Training Center MMA gym in San Diego, California; the Huntington Beach Training Center in Huntington Beach, California; the Combat Sports Academy MMA, in Dublin, California; and the Syndicate Mixed Martial Arts gym in Las Vegas, Nevada. Some examples of the Monster Trade Dress used on gym equipment are shown below:









19.     Monster's trade dress often appears with white design elements, as white tends to highlight and emphasize the green and black color scheme that is central to the Monster Trade Dress.  This can be seen in the images below from Monster-sponsored gyms.







20.     In October 2020, Monster was named the 4th Most Marketed Brand in Sports by Nielsen and Hookit.  Viewers of Monster-sponsored sports events are exposed to the Claw Icon and the Monster Trade Dress throughout the entire duration of these events; especially those viewers in close proximity to the action, for example (and depending on the event) on banners located at the event venues, on the press backdrop, the podium backdrop, athlete uniforms, athlete equipment, on transport, support and hospitality tractor trailers, and on banners, posters, signs, and on clothing and accessories sold at the events.  In addition to exposure on television, the Claw Icon and the Monster Trade Dress receive exposure on the Internet and in printed publications covering the events.

21.     Monster has sponsored numerous live sporting events, including being the official energy drink partner of the UFC since 2015; the presenting sponsor of the X Games and the Winter X Games from 2014 to 2020; hosting the MONSTER ENERGY NASCAR Cup Series from 2017 to 2019; being the title sponsor for the MONSTER ENERGY AMA Supercross Series since 2008; and others. When Monster sponsors live sporting events, Monster's Claw Icon and Monster Trade Dress are prominently displayed throughout the event, including on banners, posters, and hanging curtains throughout the events, on banners lining fields and tracks, and on pit areas and hospitality areas of the events, and in commercials throughout events' TV broadcasts and Internet coverage.

22.     Some examples of Monster's sponsorship activities in connection with athletic and sporting events are shown below.








23.     Monster has also sponsored over 500 athletes across various sports, including, but not limited to, UFC Champions Ronda Rousey and Connor McGregor; golf superstar Tiger Woods; World Champion MotoGP motorcycle racers Valentino Rossi and Jorge Lorenzo; the world's most successful Formula 1 driver Lewis Hamilton; four-time Super Bowl champion Rob Gronkowski; and many others. When Monster sponsors an athlete, both sides agree that the athlete's clothing, gear, and equipment will display certain elements of Monster's brand including, for example, the Claw Icon and/or the Monster Trade Dress.  Additionally, when participating at public appearances, Monster-sponsored athletes almost always wear clothing, headwear, helmets, or gear that displays the Monster Claw Icon and Monster Trade Dress. Examples of Opposer's sponsored sporting events and athletes, and clothing bearing the Claw Icon the Monster Trade Dress are shown below:








24.     Further, Monster provides hospitality at sporting events through a team of employees and outside companies known as the Monster Ambassador Team ("MAT"). MAT members have conducted promotional giveaways of beverages and/or other items bearing the Claw Icon and the Monster Trade Dress at the TD Garden in Boston, at the Barclays Center in New York City, at the Staples Center in Los Angeles, at the former Verizon Center (now Capital One Arena) in Baltimore, at the American Airlines Center in Dallas, at the American Airlines Arena in Miami, and at the Toyota Center in Houston.

-16-

25.     Since 2002, Monster has spent in excess of $8.5 billion dollars promoting and marketing its MONSTER brand, including the Claw Icon and the Monster Trade Dress.  From 2002 to 2016 alone, Monster spent over $4.6 billion dollars advertising, promoting, and marketing its MONSTER brand, including the Claw Icon and Monster Trade Dress.

26.     Monster's promotional efforts also include using and displaying the Claw Icon and Monster Trade Dress on, in, or in connection with widely distributed promotional and point-of-sale materials; product samplings; apparel and merchandise; trucks and other vehicles; magazines and other industry publications; Monster's website, social media sites, and other Internet websites; attendance at trade shows; and sponsorship of concert tours, live events, athletes, athletic teams, and athletic competitions around the world.  Some examples of these promotional efforts are further described below.

27.     Monster also widely markets and promotes the Claw Icon and Monster Trade Dress to consumers through clothing sales and giveaways.  Since 2002, Monster has licensed, sold and/or given away millions of items of clothing bearing its Claw Icon and Monster Trade Dress.  Below are examples of Monster apparel bearing the Monster's Claw Icon and embodying the Monster Trade Dress.





28.    Monster's Claw Icon and Monster Trade Dress also receive extensive publicity and exposure through Monster's websites including its www.monsterenergy.com website and social media sites including Monster's Facebook, Twitter, Instagram, and YouTube accounts. As of February 2021, Monster's Facebook page has over 25 million "likes"; Monster's YouTube page has over 462 million views; Monster's Twitter page has approximately 3 million followers; and Monster's Instagram page has approximately 7.3 million followers.  Monster's Claw Icon and Monster Trade Dress are displayed on these websites and social media sites.

29.    As a result of Monster's substantial use and promotion of its Claw Icon and Monster Trade Dress in connection with its MONSTER family of products, the mark and trade dress have acquired great value as specific identifiers of Monster's products and serve to identify and distinguish Monster's products from those of others.  Customers in this judicial district and elsewhere readily recognize Monster's Claw Icon and Monster Trade Dress as distinctive designations of the origin of Monster's drinks, clothing, sports-and-fitness-related products and accessories, and many other products and promotional items.  The mark and trade dress are intellectual property assets of enormous value as symbols of Monster and of its quality products, reputation and consumer goodwill.

-18-

**B.**     **Defendant's Activities**

30.     Monster is informed and believes, and on that basis alleges, that Defendant is engaged in the business of producing, distributing, marketing, and/or selling fitness-related products and apparel. Defendant owns and operates the website www.bearkomplex.com and maintains a variety of social media accounts including Facebook and Instagram.

31.     Without permission or consent from Monster, Defendant has sold, offered to sell, and/or marketed sport related equipment and accessories, bags, clothing, and related products bearing a logo consisting of a claw design which, like Monster's Claw Icon, evokes a claw having torn through the material on which the mark appears.  Defendant also uses its claw mark in connection with a green and black color scheme that is confusingly similar to the Monster Trade Dress. Examples of Defendant's sports equipment displaying the infringing claw mark and trade dress are shown below.





32.     Defendant sells its fitness-related products on its website www.bearkomplex.com. Defendant ships belts, bags, grips, apparel and other products throughout the United States, including to Indiana.

33.     Defendant's products are the same as or closely related to, and competitive with, many of the products that display Monster's Claw Icon and/or Monster Trade Dress, insofar as they are fitness equipment or fitness-related products including sports equipment, bags and athletic clothing.   Defendant's and Monster's fitness-related products also travel in similar channels of trade.   Defendant's and Monster's products are also sold and marketed to the same types of customers.   For example, as shown on Defendant's social media sites, much of Defendant's marketing for its fitness related products focuses on sporting activities and athletic events, to which Monster allocates a large proportion of its marketing budget.

34.     Defendant is aware of Monster and its valuable trademarks and trade dress.  On or about July 31, 2019, Monster's counsel sent Defendant a cease and desist letter notifying

Defendant of Monster's trademark rights in, among other things, the Claw Icon and the Monster Trade Dress.  The letter notified Defendant that the sale of its "Grip, Calicure, & Doc Spartan Monster Bundle" and its use of green in proximity to a claw icon on those products infringed Monster's intellectual property rights and demanded that Defendant, *inter alia*, cease all use of Monster's marks and trade dress. Defendant responded to Monster's letter on August 13, 2019 and agreed to remove the use of the term "MONSTER" in connection with its products. Defendants also informed Monster that the identified grip used neon yellow, rather than green. Monster believed at the time that Defendant was responding in good faith but, in an abundance of caution, Monster warned Defendant in an August 26, 2019 letter that any use of Defendant's claw mark in green, or any use of the mark principally in connection with green and black, would infringe Monster's Claw Icon and Monster's Trade Dress.

35.     Despite its professed willingness to discontinue infringement, Defendant subsequently expanded its offerings of fitness-related products bearing the Defendant's claw mark in green or with green/black color schemes.  Defendant also added green claw marks to Defendant's website against principally black or gray backgrounds.  Defendant also altered its Instagram account to adopt a green-and-black theme in connection with the infringing claw mark.  Therefore, on June 17, 2020, Monster sent a second letter to Defendant regarding its infringement.

36.     The green-and-black color scheme that Defendant adopted is very similar to the color scheme that Monster uses on the homepage of all of Monster's websites and social-media sites.  Shown below are screenshots from Monster's website and from Defendant's webpage displaying the infringing mark.

Defendant's website in October 2019:



Defendant's website in June 2020:



Monster's website:



37.     In subsequent months, Defendant continued to infringe Monster's trademark and trade dress rights, and even expanded its offerings of green-and-black themed products bearing Defendant's claw mark.   Monster again contacted Defendant about its infringement. Nonetheless, Defendant added additional infringing products in approximately August 2020. One of those new products – a Covid-19 mask – has a green and gray/black claw mark as well as a color scheme in which green and black are prominent.

38.     Monster's Claw Icon and Monster Trade Dress are famous.   Defendant was therefore aware of Monster and its trademarks when it began infringing Monster's trademark and trade dress rights.

39.     Without permission or consent from Monster, Defendant has infringed Monster's Claw Icon and the Monster Trade Dress in interstate commerce by making, using, promoting, advertising, selling, and/or offering to sell fitness related products using marks and a trade dress that are confusingly similar to Monster's marks and trade dress.

40.     Defendant's actions alleged herein are intended to cause confusion, mistake or deception as to the source of Defendant's products and are intended to cause consumers and potential customers to believe that Defendant's business and the products that it offers are associated with Monster or its family of products or services, when they are not.

41.     Indeed, Defendant has a duty to avoid confusion with Monster and its marks because Defendant entered the market after Monster.   Nevertheless, Defendant has purposely sold, promoted, marketed and/or distributed its products in a manner that creates a likelihood of confusion with Monster and its marks and trade dress.

42.     By virtue of the acts complained of herein, Defendant has created a likelihood of injury to Monster's business reputation and goodwill, caused a likelihood of consumer

confusion, mistake and deception as to the source of origin or relationship between the parties' products, and has otherwise competed unfairly with Monster.

43.     Upon information and belief, Defendant's unlawful acts are, and have been, willful and deliberate.

44.     Defendant's unlawful acts have caused damage to Monster in an amount to be determined at trial, and such damages will continue to increase unless Defendant is enjoined from its wrongful acts of infringement.

45.     Defendant's unlawful acts have caused Monster to suffer irreparable injury to its business.   Monster will suffer substantial loss of goodwill and reputation unless and until Defendant is enjoined from the wrongful acts complained of herein.

## FIRST CLAIM FOR RELIEF

### Trademark Infringement Under 15 U.S.C. § 1114

46.     Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-45 of this complaint as though fully set forth herein.

47.     This is a claim for trademark infringement arising under 15 U.S.C. § 1114.

48.     Monster owns valid and enforceable federally registered trademarks for the Claw Icon, including at least the registrations listed in Paragraph 10 above.

49.     Pursuant to 15 U.S.C.  § 1065 and 1115(b), U.S. Trademark Registration Nos. 2,903,214, 4,011,301, 3,434,821, 4,625,118, 3,908,601, 3,914,828, 3,963,668, 3,963,669, and 4,051,650 are incontestable.

50.     Defendant has used in commerce, without permission from Monster, a colorable imitation and/or confusingly similar mark and trade dress to Monster's Asserted Marks and Monster Trade Dress  in  connection  with  the  advertising,  marketing  and/or  promoting  of

-24-

Defendant's fitness related products.  Such use is likely to cause confusion or mistake, or to deceive.

51.     Upon information and belief, Defendant's actions constitute willful and intentional infringement of Monster's registered trademarks, and Defendant performed these actions with the intent to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public and by deceiving the public into believing that Defendant's products are associated with, sponsored by, originated from, or approved by Monster, when they are not.

52.     Upon information and belief, Defendant had actual knowledge of Monster's ownership and prior use of the Claw Icon, and has willfully violated 15 U.S.C. § 1114.

53.     Defendant, by its actions, has caused Monster monetary damage in an amount to be determined at trial.

54.     Defendant, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

### Trademark Infringement, Trade Dress Infringement, and False

### Designation of Origin Under 15 U.S.C. § 1125(a)

55.     Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-54 of this complaint as though fully set forth herein.

56.     This is a claim for trademark infringement, trade dress infringement, and false designation of origin arising under 15 U.S.C. § 1125(a).

57.     As a result of the widespread use and promotion of Monster's Claw Icon and Monster Trade Dress, the marks and trade dress have acquired secondary meaning to consumers and potential customers, in that consumers and potential customers have come to associate the marks and trade dress with Monster.

58.     Defendant has infringed Monster's Asserted Marks and Monster Trade Dress, and created a false designation of origin, by using in commerce, without Monster's permission, marks confusingly similar to Monster's Asserted Marks and a trade dress confusingly similar to the Monster Trade Dress, in connection with Defendant's business and the products offered by Defendant.

59.     Defendant's actions are likely to cause confusion and mistake, or to deceive as to the affiliation, connection, or association of the parties and/or their products, and/or as to the origin, sponsorship, or approval of Defendant's products and/or commercial activities, in violation of 15 U.S.C. § 1125(a).

60.     Defendant acted with the intent to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that Defendant or the products offered by Defendant are associated with, sponsored by, or approved by Monster, when they are not.

61.     Monster is informed and believes, and on that basis alleges, that Defendant had actual knowledge of Monster's ownership and prior use of the Asserted Marks and Monster Trade Dress, and without the consent of Monster, has willfully and intentionally violated 15 U.S.C. § 1125(a).

62.     Defendant, by its actions, has caused Monster monetary damage in an amount to be determined at trial.

63.     Defendant, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF

### Federal Dilution Under 15 U.S.C. § 1125(c)

64.     Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-63 of this Complaint as though fully set forth herein.

65.     This is a claim for federal trademark dilution arising under 15 U.S.C. § 1125(c).

66.     Products sold under Monster's Claw Icon have been widely advertised, promoted, and distributed to the purchasing public throughout the United States and the world.  By virtue of the wide renown acquired by Monster's Claw Icon, coupled with the national and international distribution and extensive sale of various products distributed under the Claw Icon, Monster's Claw Icon is famous, and became so prior to Defendant's acts complained of herein.

67.     Defendant's unauthorized commercial use of its mark and green/black trade dress in connection with its business and products has caused and is likely to continue to cause dilution of the distinctive qualities of Monster's famous Claw Icon and Monster Trade Dress.

68.     Defendant's acts are likely to tarnish, injure or trade upon Monster's business, reputation or goodwill, and to deprive Monster of the ability to control the use of its Claw Icon and Monster Trade Dress, the consumer associations attached to the mark and trade dress, and the quality of products associated therewith.

69.     Monster is informed and believes, and on that basis alleges, that Defendant's acts of dilution have been willful and deliberate.

70.     Defendant, by its actions, has caused Monster monetary damage in an amount to be determined at trial.

71.     Defendant, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF

**Unfair Competition Under Indiana Law**

72.     Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-71 of this Complaint as though fully set forth herein.

73.     This claim is for unfair competition under the common law of the State of Indiana.  Defendant's unlawful acts constitute trademark and trade dress infringement and unfair competition under Indiana common law.

74.     By virtue of the acts described herein, Defendant has willfully and intentionally caused a likelihood of confusion among the purchasing public in this judicial district and elsewhere as to the source or sponsorship of Defendant's products, deceived the public in order to "pass off" its products as those of Monster, and traded on Monster's reputation and good will. Defendant has therefore unfairly competed with Monster in violation of Indiana law.

75.     Defendant's unlawful acts have caused Monster monetary damage in an amount to be determined at trial.

76.     Defendant has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

77.     Defendant's acts of unfair competition are and have been willful and deliberate. Accordingly, Monster is entitled to punitive damages under Indiana law, including Ind. Code § 34-51-3, *et seq*.

## **PRAYER FOR RELIEF**

WHEREFORE, Monster prays for judgment against Defendant as follows:

A.      That the Court render a final judgment in favor of Monster and against Defendant on all claims for relief alleged herein;

B.      That the Court render a final judgment that Defendant has willfully violated the provisions of 15 U.S.C. § 1114 by infringing Monster's trademark rights in at least the marks that are the subject of the registrations listed in Paragraph 10 above;

C.      That the Court render a final judgment that Defendant has willfully violated the provisions of 15 U.S.C. § 1125(a) by infringing Monster's Asserted Marks, including the Claw Icon, by infringing the Monster Trade Dress, and by falsely designating the origin of its products;

D.      That the Court render a final judgment that Defendant has willfully violated 15 U.S.C. § 1125(c) by diluting Monster's famous Claw Icon;

E.      That the Court render a final judgment that Defendant willfully violated Indiana common law by unfairly competing with Monster;

F.      That Defendant, its agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with Defendant who receive actual notice of the injunction by personal service or otherwise, be enjoined from:

    i.      using Monster's Asserted Marks and/or the Monster Trade Dress, or any other marks or trade dress confusingly similar thereto (including Defendant's claw logo

-29-

and trade dress shown above), in connection with Defendant's business or the goods offered by Defendant, including in connection with the advertising, promoting, manufacture, distribution, or sale of Defendant's goods, and/or using Monster's Asserted Marks or the Monster Trade Dress, or any other marks or trade dress confusingly similar thereto (including Monster's claw logo and trade dress shown in Paragraphs 8, 9, 19, 19, 22, 23, 27 and 36 above), in any manner that is likely to create the impression that Defendant's goods originate from Monster, are endorsed by Monster, are sponsored by Monster, are affiliated with Monster, or are connected in any way with Monster;

ii.     filing any applications for registration of any marks or trade dress confusingly similar to Monster's Asserted Marks or the Monster Trade Dress;

iii.    otherwise infringing any of Monster's Asserted Marks or the Monster Trade Dress;

iv.    diluting the distinctive qualities of the Claw Icon or any of Monster's other trademarks;

v.     falsely designating the origin of Defendant's goods in any manner suggesting that the goods originate from Monster;

vi.    unfairly competing with Monster in any manner whatsoever; and

vii.   causing a likelihood of confusion or injury to Monster's business reputation;

G.     That Defendant be directed to file with this Court, within 30 days of the injunction, a written report describing in detail and under oath the manner in which it has complied with the injunction pursuant to 15 U.S.C. § 1116;

-30-

H.      That Defendant be required to account for and pay to Monster any and all profits derived by Defendant by virtue of Defendant's acts complained of herein;

I.      That Defendant be ordered to compensate Monster for all damages Monster has sustained as a consequence of the acts complained of herein, subject to proof at trial, together with prejudgment and post-judgment interest;

J.      That this case be deemed exceptional, that the amount of the damages be trebled, and that the amount of disgorged profits be increased by as many times as the Court deems appropriate, pursuant to 15 U.S.C. § 1117;

K.      That Monster be awarded exemplary and punitive damages under Indiana common law;

L.      That Defendant's actions be deemed willful;

M.      That an award of reasonable costs, expenses and attorneys' fees be awarded to Monster pursuant to at least 15 U.S.C. § 1117;

N.      That Defendant be required to deliver and destroy all devices, literature, advertising, goods and other unauthorized materials bearing Monster's Asserted Marks or the Monster Trade Dress, or any confusingly similar marks or trade dress, pursuant to 15 U.S.C. § 1118;

O.      That Monster be awarded restitution and disgorgement; and

P.      That Monster be awarded such other and further relief as the Court deems just.

## <ins>DEMAND FOR TRIAL BY JURY</ins>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Monster Energy

Company hereby demands a trial by jury on all issues so triable.


Respectfully submitted,


Dated: May 26, 2021          By: /s/ James W. Riley, Jr.
                                       James W. Riley, Jr. (No. 6073-49)
                                       Jaclyn M. Flint (No. 32589-49)
                                       RILEY BENNETT EGLOFF LLP
                                       500 N. Meridian Street, Suite 550
                                       Indianapolis, IN 46204
                                       Tel: (317) 636-8000
                                       Fax: (317) 636-8027
                                       jriley@rbelaw.com
                                     jflint@rbelaw.com


Steven J. Nataupsky (CA BN 155913)
steven.nataupsky@knobbe.com
*(pro hac vice pending)*
Lynda J. Zadra-Symes (CA BN 156511)
lynda.zadrasymes@knobbe.com
*(pro hac vice pending)*
Sean M. Murray (CA BN 213655)
Sean.murray@knobbe.com
*(pro hac vice pending)*
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Ari N. Feinstein (DC BN 888314557)
ari.feinstein@knobbe.com
*(pro hac vice pending)*
KNOBBE, MARTENS, OLSON & BEAR, LLP
1717 Pennsylvania Avenue NW #900
Washington, DC 20006
Phone: (202) 640-6400
Facsimile: (202) 640-6401
Ari.Feinstein@knobbe.com

*Attorneys for Plaintiff*
MONSTER ENERGY COMPANY

-32-